MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

RODNEY C. VILLAZOR (NYBN 4003596)
CHRISTINA M. McCALL (CABN 234139)
Assistant United States Attorneys
    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    rodney.villazor@usdoj.gov
    christina.mccall@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. CR 12-00293 WBS |
| | ) | |
| Plaintiff, | ) | UNITED STATES' TRIAL BRIEF |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE ANTONIO GUTIERREZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

TO:    THIS HONORABLE COURT, THE DEFENDANT, AND HIS ATTORNEY:

**I.    STATUS OF THE CASE**

    Trial of defendant Jose A. Gutierrez (Defendant) on one count of the Indictment is confirmed for September 25, 2013, before the Honorable William B. Shubb. The estimated length of the trial is two full court days for the government's case in chief. The government has subpoenaed approximately 13 federal law enforcement witnesses and two lay witnesses. Trial is by jury. Defendant is out of custody and has been on pretrial release since April 3, 2012. His release is secured by a $20,000 personal recognizance bond.

On April 24, 2012, an Oakland Grand Jury returned a one-count Indictment against Defendant. The defendant was arraigned on the Indictment on July 13, 2012, and, at that time, he entered a not guilty plea.  Trial will therefore proceed against Defendant on the one count charging him with forcibly assaulting a Deputy United States Marshal (DUSM) in violation of 18 U.S.C. § 111(a).

## II.   FACTS

On April 2, 2012, the Drug Enforcement Administration (DEA) and the Internal Revenue Service Criminal Investigation Division (IRS-CID) executed a series of federal search warrants in Oakland, California, including search warrants at a marijuana growing location known as Oaksterdam University located at 1600 Broadway, and at a marijuana dispensary known as Coffeeshop Blue Sky located at 389 17th Street.  The United States Marshals Service (USMS) provided assistance for site security.

### A.  Defendant's Conduct at Oaksterdam University, 1600 Broadway, Oakland

As agents executed the search warrant at the 1600 Broadway location, a group of protestors, including Defendant, gathered outside on the street shouting obscenities towards the agents.  That day, Defendant was wearing wearing an animal-style mask over his face, a grey sweatshirt and combat fatigue-style camouflage pants.  Agents also observed him carrying a megaphone.

While at the 1600 Broadway location, agents also observed Defendant begin to march in a circle with other protestors in an attempt to prevent government vehicles from exiting the parking lot.  As an agent attempted to shield the protestors away from the parking lot exit, Defendant stepped in front of one of the vehicles and yelled: "You hit me."  As the agent removed Defendant from the front of the vehicle, Defendant stated: "It's all a game."  Another agent saw Defendant encourage other protestors to block the parking lot exit before jumping onto a vehicle and yelling: "My back.  You hit me."  The agent then heard Defendant state: "It's all a game."  A third agent saw Defendant dramatically falling onto the hood of a government vehicle and yelling that he had been injured.

Another agent observed Defendant urging the mob of protestors to lie down in front of a truck that contained boxes seized from the 1600 Broadway location.  Defendant yelled, "Don't let them leave," and "Block them in."  As the agents departed the 1600 Broadway location, another agent saw Defendant blocking a vehicle as it drove away.  As the vehicle drove away, the agent had to

1  continuously push Defendant out of the way at which point the Defendant would "roll back around and

2  get in front of the vehicle."  Defendant continued to lean on the agent as the agent tried to clear a path

3  for the vehicle.

4        B.  Defendant's Conduct at the Coffeeshop Blue Sky, 389 17th Street, Oakland

5        Later that day, the DEA at the marijuana dispensary located on 17th Street in Oakland requested

6  assistance from the USMS.  The request came as agents from the DEA and the IRS were trapped inside

7  the dispensary by a crowd of protesters.

8        Several Deputy U.S. Marshals (DUSMs) were the first to arrive at the Coffeeshop Blue Sky

9  wearing distinctive law enforcement attire.  They immediately took positions outside the entrance of the

10  address to form an ad hoc barricade between the entrance and the crowd of protestors.  Among other

11  obstructive conduct, several protesters yelled into the faces of the DUSMs standing guard resulting in

12  saliva hitting the deputies' faces and uniforms.

13        Deputy Shaygan Shakeri, the victim DUSM, arrived after the first group of DUSMs.  Deputy

14  Shakeri was wearing a dark blue baseball cap with the USMS logo on the front; a dark blue jacket

15  marked with a gold USMS chest logo with the words, "US MARSHAL" printed under the logo, on the

16  back, and on both sleeves.  When he arrived, he joined a group of recently-arrived DEA and IRS-CID

17  agents who had gathered across the street from the Coffeeshop Blue Sky.  Deputy Michael McCloud, a

18  DUSM supervisor, then instructed all the federal agents to join the DUSMs standing outside the

19  Coffeeshop Blue Sky.

20        As the federal agents walked towards the Coffeeshop Blue Sky in a line, several members of the

21  protestors began shouting and yelling and pointing their cameras in the faces of the marching agents.

22  Deputy Shakeri, in pertinent part, had to physically move protestors blocking his way.  When Deputy

23  Shakeri walked past Defendant, who was standing to Deputy Shakeri's right, Defendant first elbowed

24  Deputy Shakeri in the back, and then struck him in the back with both his hands, while holding a protest

25  sign.  Deputy Shakeri staggered forward from the force of the strike.  Deputy McCloud was immediately

26  behind Shakeri and had an unobstructed view of the strike from just a few feet away.

27        Fearing additional attacks on law enforcement, Deputy McCloud immediately attempted to arrest

28  Defendant, but Defendant resisted.  Both Deputy McCloud and Defendant then fell to the ground in a

1    struggle, and other federal law enforcement attempted to assist Deputy McCloud to place handcuffs on

2    Defendant.  Defendant forcibly resisted arrest, attempting to strike the deputies with his knees, and

3    cursed at them until he was subdued in handcuffs.  After law enforcement officers placed Defendant into

4    handcuffs, Defendant told one of the deputies: "I am done fighting.  I'm not fighting anymore."

5          C.  Summary of Evidence

6          Deputy McCloud will testify that he witnessed Defendant assault Deputy Shakeri when

7    Defendant intentionally struck Deputy Shakeri in the back while holding a sign and that Defendant

8    forcibly resisted Deputy McCloud's attempts to arrest him.  Other DUSMs stationed outside the

9    Coffeeshop Blue Sky will also testify as to their personal observations.  Finally, video footage and

10   multiple still images, taken from different vantage points by numerous protestors that were uploaded to

11   publicly accessible websites, confirm Defendant's assault of Deputy Shakeri and his subsequent actions

12   of resisting arrest as multiple officers attempt to subdue him.  A frame-by-frame review of those videos

13   also depicts Defendant committing the two-part assault on Deputy Shakeri.  The video footage and still

14   photos also confirm that Defendant was wearing an animal-style partial mask over his face along with a

15   grey sweatshirt and combat fatigue-style camouflage pants.

16   **III.   APPLICABLE STATUTES**

17          The government has submitted applicable Ninth Circuit Model jury instructions defining the

18   crime of assault on a federal officer in violation of 18 U.S.C. § 111(a).

19   **IV.   EVIDENTIARY ISSUES**

20          A.  Stipulated Authenticity

21          The parties have agreed to stipulate to the authenticity of all video footage and still images

22   derived from the video footage identified in their respective exhibit lists to avoid unnecessary delay, but

23   each party has reserved the right to object to the relevancy of any given video exhibit.   Notwithstanding

24   the parties' agreement, the government anticipates presenting testimony by DUSMs who are familiar

25   with its video and still image exhibits stating that the video and photo evidence fairly and accurately

26   depicts that scene at some relevant time.  This is a sufficient basis for admission of the videos and

27   images.  Fed. R. Evid. 90l(a); see United States v. Brannon, 616 F.2d 413, 416 (9th Cir.), cert. denied,

28   447 U.S. 908 (1980); Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 973-74 (2d Cir.

1    1985) (citing cases).

2          The government further intends to use the Court's presentation equipment to show the jury any

3    videos or photographs entered into evidence. Rather than asking the Court's permission to "publish"

4    such information to the jury after each photograph is entered into evidence, the government respectfully

5    requests permission to publish photographs to the jury that have been entered into evidence during the

6    direct examination of the witness. It is not anticipated that defendant's counsel will object to such a

7    procedure.

8          B.  Expert Testimony

9          A witness who is "qualified as an expert by knowledge, skill and experience" may present expert

10   testimony if his or her specialized knowledge will assist the trier of fact to understand the evidence or to

11   determine a fact in issue. Fed. R. Evid. 702; United States v. Espinoza, 827 F.2d 604, 612 (9th Cir.

12   1987). The admission of expert testimony is a matter within the sound discretion of the trial court.

13   United Stated v. Kinsey, 843 F.2d 383, 387-89 (9th Cir. 1988); United States v. Anderson, 813 F.2d

14   1450, 1458 (9th Cir. 1987).

15         The government does not intend to present any expert testimony in its case-in-chief but does

16   expect to challenge the qualifications and relevancy of Frederick Allen, one of Defendant's two

17   proffered experts, if called to testify.

18         C.  Defendant's Statements

19         The government intends to introduce evidence of Defendant's statements to DUSMs during his

20   arrest in its case-in-chief and, if the defense opens the door to the relevant testimony, Defendant's

21   statements and actions to DEA and IRS Agents made near the Oaksterdam University prior to the

22   offense conduct.

23         D.  Cross-Examination of Defendant's Character Witnesses

24         If Defendant calls any witnesses from his witness list as a character witness, the government

25   intends to cross-examine any such witness of specific instances of Defendant's past conduct relevant to

26   the character trait at issue. Fed. R. Evid. 405(a); Michelson v. United States, 335 U.S. 469, 479 (1948).

27   However, Defendant may not, on direct examination, ask about specific instance of conduct. Fed. R.

28   Evid. 405(a).

1    E.  Chain of Custody

2        Evidence regarding the chain of custody concerning an item of seized evidence goes to the

3    weight as opposed to the admissibility of the evidence.  United States v. Robinson, 967 F.2d 287, 292

4    (9th Cir. 1992).  Defendant has not raised any issues on this topic prior to trial and has not notified

5    government counsel of any claims of impropriety in evidence handling at this time.

6    F.  "Missing Witness" Argument

7        The government believes that there may be witnesses that neither party chooses to call to testify.

8    A prosecutor's comment on a defendant's failure to call a witness does not shift the burden of proof and

9    is therefore permissible so long as there is no comment on Defendant's failure to testify. United States v.

10   Cabrera, 201 F.3d 1243, 1249 (9th Cir. 2000); United States v. Hernandez, 145 F.3d 1433, 1439 (11th

11   Cir. 1998).  A "missing witness" instruction is proper only if from all circumstances an inference of

12   unfavorable testimony from absent witness is natural and reasonable one.  United States v. Bramble, 680

13   F.2d 590, 591 (9th Cir. 1982).

14   G.  Jencks Discovery

15       The government has produced Jencks material to defense counsel in its Rule 16 discovery.  Any

16   additional material will be produced as it becomes available.  It is not, however, anticipated that

17   production of Jencks material will cause delays in the trial.

18   H.  Presentation of Witnesses

19       It is possible that the government may have to call certain witnesses out of order or recall

20   witnesses to testify to various events to maintain a chronological presentation.  This should provide for

21   an orderly presentation of the evidence and assist the jury, the court, and Defendant in understanding the

22   evidence being presented.

23   I.  Prior Inconsistent Statements

24       If Defendant chooses to put on a defense, the government anticipates that there may be defense

25   witnesses who have given prior inconsistent statements.  Any prior statements not made under oath will

26   be admissible only as impeachment evidence, and the Court should give a limiting instruction to that

27   effect.

28

J.   Recording or Broadcasting From Court

Federal Rule of Criminal Procedure 53 prohibits photographing, videotaping or broadcasting of judicial proceedings from the courtroom.  Given the publicity surrounding the execution of federal search warrants on April 2, 2012, the government anticipates numerous spectators to attend the courtroom proceedings, some of whom may attempt to record or broadcast the proceedings on the Internet as they had done with their video recordings during the execution of the Oaksterdam search warrants.  The government respectfully requests that the Court ban all electronic devices in the courtroom galley and instruct courtroom security officers to confiscate any electronic devices brought into the courtroom by spectators.

## V.   POSSIBLE DEFENSES

Defendant has not given notice of any defense for which the Federal Rules of Criminal Procedure require notice.  Therefore, the government will move to bar any such defense if it is raised during trial.

Defense counsel also raised a potential entrapment defense in its various motions, but at the September 5, 2013 motion hearing, defense counsel withdrew the entrapment defense.  If the defense raises entrapment at trial, the government would be entitled to present evidence that Defendant was predisposed to commit this type of crime.

Finally, Defendant has indicated that he intends to place the issues of his intent and "accidental contact" in dispute at trial.  In multiple pleadings, Defendant claims that his physical assault on Deputy Shakeri was not intentional, but instead the result of accidental contact caused by a "surge" of protestors either orchestrated by law enforcement or caused by the negligence of the USMS.  Defendant's crowd surge conspiracy theory is set forth repeatedly in his pleadings.

## VI.   WITNESS EXCLUSION & CASE AGENT DESIGNATION

The government will move for the exclusion of all witnesses until their testimony has been completed, pursuant to Fed. R. Evid. 615.  The government will further move that DUSM David Siegel be designated as case agent and be exempt from the exclusion order pursuant to Federal Rule of Evidence 615.  See United States v. Little, 753 F.2d 1420, 1441 (9th Cir. 1985).

1    In addition, under Federal Rule of Criminal Procedure 60, the Court must not exclude Deputy

2  Shakeri, the victim federal agent in this case, unless the Court determines by clear and convincing

3  evidence that the victim's testimony would be materially altered if the victim heard other witnesses

4  testify.

5  **VII.    CONCLUSION**

6    The foregoing is a summary of points the government anticipates may arise at trial.  Should any

7  legal issues arise that have not been covered in this trial brief, the government respectfully requests

8  leave to submit such further memoranda as may be necessary.

9

10  DATED: September 18, 2013                           Respectfully submitted,

11                                                      MELINDA HAAG
                                                        United States Attorney
12

13

14                                                      _____/s/_____
                                                        RODNEY C. VILLAZOR
15                                                      CHRISTINA M. McCALL
                                                        Assistant United States Attorneys
16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES' TRIAL BRIEF
CR 12-00293 WBS                          8