MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

CHRISTINA McCALL (CABN 234139)
RODNEY VILLAZOR (NYBN 4003596)
Assistant United States Attorneys
    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    christina.mccall@usdoj.gov
    rodney.villazor@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. CR 12-00293 WBS |
| Plaintiff, | ) |
| | ) UNITED STATES' SENTENCING |
| v. | ) MEMORANDUM |
| JOSE ANTONIO GUTIERREZ, | ) |
| Defendant. | ) |

The United States of America requests that defendant Jose A. Gutierrez be sentenced to six months of imprisonment and six months of home confinement, following his conviction for assaulting a federal officer.

**FACTUAL BACKGROUND**

On April 2, 2012, the Drug Enforcement Administration (DEA) and the Internal Revenue Service Criminal Investigation Division (IRS-CID) executed a series of federal search warrants in Oakland, California, including search warrants at a marijuana growing location known as Oaksterdam University located at 1600 Broadway, and at a marijuana dispensary known as Coffeeshop Blue Sky

SENTENCING MEMO CR 12-00293 WBS

located at 389 17th Street. The United States Marshals Service (USMS) provided assistance for site security.

### A. Defendant's Conduct at Oaksterdam University, 1600 Broadway, Oakland

As agents executed the search warrant at the 1600 Broadway location, a group of protestors, including Defendant, gathered outside on the street shouting obscenities towards the agents. That day, Defendant was wearing an animal-style mask over his face, a grey sweatshirt and combat fatigue-style camouflage pants. Agents also observed him carrying a megaphone.

While at the Oaksterdam University location, agents also observed Defendant begin to march in a circle with other protestors in an attempt to prevent government vehicles from exiting the parking lot. As an agent attempted to shield the protestors away from the parking lot exit, Defendant stepped in front of one of the vehicles and yelled: "You hit me." As the agent removed Defendant from the front of the vehicle, Defendant stated: "It's all a game."

Another agent observed Defendant urging the mob of protestors to lie down in front of a truck that contained boxes seized from the Oaksterdam University location. Defendant yelled, "Don't let them leave," and "Block them in." As the agents departed the Oaksterdam location, another agent saw Defendant blocking a vehicle as it drove away. As the vehicle drove away, the agent had to continuously push Defendant out of the way at which point the Defendant would "roll back around and get in front of the vehicle." Defendant continued to lean on the agent as the agent tried to clear a path for the vehicle.

### B. Defendant's Conduct at the Coffeeshop Blue Sky, 389 17th Street, Oakland

Later that day, the DEA agents at the marijuana dispensary located on 17th Street in Oakland requested assistance from the USMS deputies. The request came as agents from the DEA and the IRS were trapped inside the dispensary by a crowd of protesters. In an effort to react quickly to a potentially dangerous, urgent situation, the USMS deputies quickly left the federal building and drove to the scene to try to help the agents stranded inside the dispensary with no law enforcement presence outside the location.

Several Deputy U.S. Marshals (DUSMs) were the first to arrive at the Coffeeshop Blue Sky wearing distinctive law enforcement attire. They immediately took positions outside the entrance of the

address to form an ad hoc barricade between the entrance and the crowd of protestors. Among other obstructive conduct, several protesters yelled into the faces of the DUSMs standing guard resulting in saliva hitting the deputies' faces and uniforms.

Deputy Shaygan Shakeri, the victim DUSM, arrived after the first group of DUSMs. Deputy Shakeri was wearing a dark blue baseball cap with the USMS logo on the front; a dark blue jacket marked with a gold USMS chest logo with the words, "US MARSHAL" printed under the logo, on the back, and on both sleeves. When he arrived, he joined a group of recently-arrived DEA and IRS-CID agents who had gathered across the street from the Coffeeshop Blue Sky. Deputy Michael McCloud, a DUSM supervisor, then instructed all the federal agents to join the DUSMs standing outside the Coffeeshop Blue Sky. The idea was to form a corridor so the agents inside could successfully exit through the crowd with the seized evidence, as they had done at the Oaksterdam location.

As the federal agents walked towards the Coffeeshop Blue Sky, several members of the crowd began shouting and yelling and pointing their cameras in the faces of the marching agents. Deputy Shakeri, in pertinent part, had to physically move protestors blocking his way. When Deputy Shakeri walked past Defendant, who was standing to Deputy Shakeri's right, Defendant first attempted to elbow Deputy Shakeri in the back, and then struck him in the back with both his hands, while holding a protest sign. Deputy Shakeri staggered forward from the force of the strike. Deputy McCloud was immediately behind Shakeri and had an unobstructed view of the strike from just a few feet away.

Fearing additional attacks on law enforcement, Deputy McCloud immediately attempted to arrest Defendant, but Defendant resisted. Both Deputy McCloud and Defendant then fell to the ground in a struggle, and other federal law enforcement officers attempted to assist Deputy McCloud to place handcuffs on Defendant. Defendant forcibly resisted arrest, attempting to strike the deputies with his knees, and cursed at them until he was subdued in handcuffs. After law enforcement officers placed Defendant into handcuffs, Defendant told one of the deputies: "I am done fighting. I'm not fighting anymore."

## **ARGUMENT**

DEFENDANT'S SENTENCING GUIDELINES RANGE IS 12-18 MONTHS' IMPRISONMENT.

SENTENCING MEMO CR 12-00293 WBS

3

The United States agrees with the Sentencing Guidelines calculations set forth in the Presentence Investigation Report ("PSR"). The United States, however, recommends that this Court impose a split sentence of six months in custody and six months of home confinement.

A. <u>The Applicable Sentencing Guidelines</u>

|  | **U.S.S.G. Section** | **Level/Points** |
|---|---|---|
| Base offense level | §2A2.4(a) | 10 |
| Specific offense characteristics | §2A2.4(b)(1) [physical contact] | +3 |
| Adjusted offense level |  | 13 |
| Acceptance of responsibility | 3E1.1 | 0 |
| Total offense level |  | 13 |
| Criminal History Category |  | I |
| RANGE |  | 12-18 months |

1. The Base Offense Level

United States Sentencing Guidelines (U.S.S.G.) § 1B1.2(a) requires courts to "Refer to the Statutory Index (Appendix A) to determine the Chapter Two offense guideline, referenced in the Statutory Index for the offense of conviction. … For statutory provisions not listed in the Statutory Index, use the most analogous guideline." Application Note 1 clarifies: "In the case of a particular statute that proscribes a variety of conduct that might constitute the subject of different offense guidelines, the Statutory Index may specify more than one offense guideline for that particular statute, and the court will determine which of the referenced guideline sections is most appropriate for the offense conduct charged…." Partially in response to cases such as <u>United States v. Smith</u>, 186 F.3d 290 (3d Cir. 1999), on November 1, 2000, the Commission amended sections 1B1.1 and 1B1.2(a):

> The amendment modifies §§ 1B1.1(a), 1Bl.2(a), and the Statutory Index's introductory commentary to clarify the inter-relationship among these provisions. The clarification is intended to emphasize that the sentencing court must apply the offense guideline referenced in the Statutory Index for the statute of conviction unless the case falls within the limited "stipulation" exception set forth in § lB1.2(a). Appendix C, Amendment 591, November 1, 2000. [Exhibit 1.]

SENTENCING MEMO CR 12-00293 WBS

4

Before Amendment 591, the Guidelines gave courts discretion to apply a guideline that is "most applicable to the nature of the offense conduct." United States v. McCulligan, 58 Fed. Appx. 545 (3d. Cir. 2002). Since 2000, courts must apply the offense guidelines referred in the Statutory Index for the statute of conviction.

Violations of 18 U.S.C. § 111 fall under Sentencing Guidelines sections 2A2.2 (aggravated assault) or 2A2.4 (obstructing or impeding officers). See U.S.S.G. Appendix A, Statutory Index. Defendant argues in his Objections to the Presentence Report that section 2A2.3 (minor assault) should be used. There is no reference to section 2A2.3 (minor assault) for a violation of 18 U.S.C. § 111 in Appendix A, and there is no reference to 18 U.S.C. § 111 in section 2A2.3. Therefore, section 2A2.3 is not an offense guideline section that can be applied in this case. See United States v. Williams, 260 Fed. Appx. 444 (3d Cir. 2008); United States v. McCulligan, 58 Fed. Appx. 545 (3d. Cir. 2002); United States v. Hicks, 313 Fed. Appx. 674, 675 (4th Cir. 2009); United States v. Magallanes-Torres, 386 Fed. Appx. 766, 770 (10th Cir. 2010); United States v. Perea, 2010 U.S. Dist. LEXIS 76791, D. New Mexico, July 8, 2010; and Lora-Pena v. United States, 2008 U.S. Dist. LEXIS 100892, D. Delaware, December 15, 2008. 1

United States v. Hood, 210 F.3d 660, 664 (6th Cir. 2000), which held that section 2A2.3 (minor assault) should sometimes be used in non-aggravated assault cases under section 111, was decided before Amendment 591 and is no longer a valid holding. See United States v. Chilingirian, 280 F.3d 704, 714 (6th Cir. 2002).

The USPO and the parties agree that § 2A2.2 (aggravated assault) is not an appropriate guideline to apply to the facts of this case, so § 2A2.4 (obstructing or resisting an officer) is the appropriate guideline section to determine the base offense level.

2. Adjustments

Because Gutierrez's offense of conviction involved physical contact, a 3-level increase is warranted under §2A2.4(b)(1)(A).

3. Acceptance of Responsibility

---

1 The cases cited in this section are collectively attached as Exhibit 2 for the Court's convenience.

SENTENCING MEMO CR 12-00293 WBS

5

1    Defendant is not entitled to any decrease for acceptance of responsibility under U.S.S.G. § 3E1.1, which provides, "If the defendant <u>clearly</u> demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." (Emphasis added). The first application note to section 3D1.1 state that appropriate considerations for determining acceptance of responsibility include: truthfully admitting the conduct comprising the offense of conviction; voluntary payment of restitution prior to adjudication of guilt; and the timeliness of the defendant's conduct in manifesting the acceptance of responsibility. Defendant fails to establish any of these considerations.

In <u>United States v. McKinney</u>, McKinney was arrested with several other men just after committing an armed bank robbery. 15 F.3d 849 (9th Cir. 1994). McKinney truthfully identified himself, revealed the location of the gun to the officers, and confessed to his involvement in the crime at the police station shortly after arrest, although he did not identify anyone else involved in the robbery. <u>Id.</u> at 850. At the start of his trial, McKinney attempted to plead guilty to two of the counts in the indictment, and expressed confusion about whether he had already entered a guilty plea. <u>Id.</u> at 851. After the jury convicted McKinney on all three counts charged, the district judge did not grant McKinney any reduction for acceptance of responsibility during sentencing. The Ninth Circuit held, "in appropriate circumstances the reduction is also available in cases in which the defendant <u>manifests genuine contrition</u> for his acts but nonetheless contests his factual guilt at trial." <u>Id.</u> at 853 (emphasis added). The appellate court found that "McKinney's confession, assistance to authorities, and attempts to plead guilty make his sincere contrition clear beyond all measure" and vacated McKinney's sentence. <u>Id.</u>

In <u>United Sates v. Cantrell</u>, five defendants were convicted by a jury of conspiring to distribute methamphetamine. 433 F.3d 1269 (9th Cir. 2006). Defendant Coversup was not eligible for a downward adjustment for acceptance of responsibility because he did not meet his burden of showing that he accepted responsibility for his crime. <u>Id.</u> at 1285. Coversup did not exhibit sufficient contrition to merit an adjustment under § 3E1.1, and did not truthfully admit the conduct comprising the offenses of conviction, or truthfully admit additional relevant conduct. <u>Id.</u>

Unlike McKinney, and like Coversup, Defendant has never manifested genuine contrition for his acts. He never admitted his involvement in the offense, before, during or after trial. Defendant testified

SENTENCING MEMO CR 12-00293 WBS

6

at trial and contested the elements of the offense. Defendant never truthfully admitted his criminal conduct; his statement to the Probation Officer – "I am ashamed for my actions and wish I could take back any harm I caused any and all of the parties involved" – is inconsistent with his trial testimony and is not an admission of his involvement in the crime, or a manifestation of sincere contrition. [PSR ¶ 11.] Defendant has filed post-trial motions claiming that no reasonable jury could have found him guilty of the offense charged, and claiming that the elements of the offense have not been met, positions which are inconsistent with true acceptance of responsibility.

    4. Sentencing Calculations

Given Defendant's criminal history category of I and total offense level of 13, the Sentencing Guidelines suggest a range of imprisonment of 12 to 18 months. That is in Zone C of the sentencing table, which provides that the minimum term may be satisfied by a sentence of imprisonment or a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community or confinement or home detention, provided that at least one-half of the minimum term is satisfied by imprisonment. U.S.S.G. § 5C1.1(d)(1) and (2).

  B. <u>Other Sentencing Considerations, Including § 3553(a) Factors</u>

Congress' goal in enacting section 111 in 1934 was to provide: "maximum protection to federal officers by making prosecution for assaults upon them cognizable in the federal courts …." <u>United States v. Feola</u>, 420 U.S. 671, 684 (1975); <u>cited in</u> <u>United States v. Sommerstedt</u>, 752 F.2d 1494, 1497 (9th Cir. 1985). The deputies of the USMS are frequently called to act in dangerous situations in order to support our federal justice system, and are beneficiaries of Congress' intent to provide maximum protection so that they can effectively perform their duties without being assaulted.

    1. Nature and Circumstances of the Offense.

As described in the "Factual Background" section above, the nature and circumstances of the offense involve a forcible assault on a USMS deputy in the performance of his official duties. Leading up to the incident outside Coffeeshop Blue Sky, Defendant attempted to obstruct or impede federal officers at the Oaksterdam University location. After the assault, Defendant screamed profanities at arresting agents and forcibly resisted arrest, requiring approximately four deputies to subdue and handcuff him.

2. Defendant's History & Characteristics.

Defendant's criminal record demonstrates that he has a history of resisting officers and striking or injuring other people. In 1989, Defendant was convicted of obstructing or resisting a public officer [PSR ¶ 24], and in 1990 he was convicted of misdemeanor battery. [PSR ¶ 25] In 1990, he was convicted of obstructing or resisting a public officer [PSR ¶ 26]. In 1992, Defendant was convicted of driving under the influence of alcohol and causing bodily injury; he received a sentence of one year in jail. [PSR ¶ 27] Due to the age of those convictions, the police reports are no longer available, and they score no criminal history points. Defendant assaulted off-duty police officers working at a bar in San Francisco in 2004, but successfully completed diversion, so his case did not result in a criminal conviction. [PSR ¶ 30]

The only arrest that Defendant accrued since 2004 was a 2006 arrest for selling of marijuana, with no charges filed. Defendant volunteered at a local non-profit radio station for years, and the letters from his family members and friends indicate he is devoted to his parents and children, helping care for them.

3. Deterrence to Criminal Conduct & Promotion of Respect for the Law.

Defendant's multiple prior convictions for resisting officers and battery indicate a need for a sentence significant enough to deter him from further criminal conduct. A six-month federal sentence should be sufficient to deter him from further actions against law enforcement officers. Such a sentence should also act as a general deterrent, to other similarly-situated persons who are contemplating committing a similar offense against federal law enforcement officers engaged in the performance of their official duties.

**CONCLUSION**

Based upon the facts and arguments set forth above, the United States respectfully requests that the Court impose a split sentence of six months in custody and six months of home confinement. This is approximately half of the custodial sentence that the Sentencing Guidelines suggest. The government does not request the imposition of a fine, given Defendant's inability to pay. A period of community service during the home confinement would allow Defendant to give back to his community and develop job skills that would aid in his rehabilitation. During the home confinement period, Defendant

SENTENCING MEMO CR 12-00293 WBS

could also work toward his goal of becoming a certified interpreter, or attain paid employment. The mental health counseling condition recommended by the Probation Officer would enable Defendant to address the "poor judgments" he occasionally makes and address any remaining brain injury as a result of his 2012 car accident. [PSR ¶ 11]

DATED: January 6, 2014  Respectfully submitted,

MELINDA HAAG
United States Attorney

_____/s/_____
CHRISTINA MCCALL
RODNEY VILLAZOR
Assistant United States Attorneys

SENTENCING MEMO CR 12-00293 WBS

9