J. TONY SERRA (SB#32639)
Pier 5 Law Offices
506 Broadway
San Francisco, CA 92133
Tel: (415) 986-5591
Fax: (415) 421-1331

EDITTE LERMAN (SB#241471)
Law Offices of E. D. Lerman
280 North Oak Street
Ukiah, CA 95482
Tel: (707) 468-8300
Fax: (707) 937-2207

OMAR FIGUEROA (SB#196650)
Law Offices of Omar Figueroa.
7770 Healdsburg Ave., Ste. A.
Sebastopol, CA 95472-3352.
Tel: (707) 829-0215
Fax: (707) 861-9187

Attorneys for Defendant
JOSE ANTONIO GUTIERREZ

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

* * * * * *

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CASE NO.: 12-CR-00293-PJH |
| ) | |
| Plaintiff, ) | **DEFENDANT'S SENTENCING BRIEF** |
| ) | |
| JOSE ANTONIO GUTIERREZ ) | |
| Defendant. ) | |

Defendant, JOSE ANTONIO GUTIERREZ, disagrees with the proposed sentence submitted by the government in that it is excessive in light of the circumstances, and in light of the fact that the underlying act behind the conviction did not involve an obstruction of justice.

Defendant, taking responsibility of his actions, contends that in light of the nature and circumstances of the offense that he should be sentenced within the lower spectrum of Offence Level 8, Category I, which is 0-6 months.

## INTRODUCTION

The immediate case does not involve an unprovoked assault upon a government agent. It is in a significant part the product of the foreseeable consequences of government agents comingling themselves within a group of heated protestors whom are protesting their actions. Such a case requires the government to take minimal measures to prevent these foreseeable consequences with the use of police barricades, and orders to disperse. Moreover, while the government agents were comingling themselves with the protestors, the victim, Agent Shakeri, took it upon himself to physically engage with the protestors at least twice, one of which was the triggering event leading to his assault.

The defendant presents these facts below, believing that they should be considered by the court during sentencing, as they fall within the "the nature and circumstances of the offense" which should be considered pursuant to 18 *USC* § 3553 (a)(1).

The defendant will also argue herein that the sentencing guideline provided by USSG § 2A2.3 - Minor Assault, in conjunction with USSG § 3A1.2 – Official Victim, are the appropriate guidelines for this case.

## FACTUAL BACKGROUND

As clearly depicted within the Government's Sentencing Memorandum (DOC 136) the incident in the instant case was a foreseeable consequence of the Government's actions. The facts provide that while the government was attempting to enforce Federal Law concerning the

1  distribution of marijuana, the community at hand protested the government's actions which they
2  viewed as an assault upon their community; a community which allowed the distribution of
3  marijuana under state law.
4      Ultimately the heated protest was caused by the conflict between Federal and State law
5  regarding the use and distribution of marijuana for medical purposes.  The government
6  anticipated these protests, yet they choose to take zero preventive measures to prevent any
7  contact between their agents and the public, while they executed search warrants on the
8  community's medical marijuana dispensaries.  One of the agents, Agent Shakeri who was the
9  victim, began to physically push the protestors without cause.  Shakeri's actions naturally
10 resulted in further anger of the protestors.
11     Had the government maintained a secure area around the place that was searched, and
12 refrained from making unnecessary physical contact with the protestors, it is reasonably
13 foreseeable that none of the events relevant to this case would have occurred.
14     The Government's Sentencing Memorandum (DOC 136) first describes the actions of a
15 "group of protestors," gathered at the "Oksterdam University" location, where the government
16 was executing a search warrant.  The photographs and video footage submitted to this court
17 shows that the protestors were angry with the government's actions.
18     Despite the heated situation between the government and the protesters, "later that day"
19 (DOC 136) the government decided to execute a second search warrant at the "Coffeeshop Blue
20 Sky," without making any preparations to cordon off the coffee shop from the protestors.  This
21 was an obvious disaster in the making.
22     The agents executing the second search warrant at the "Coffeeshop Blue Sky," thereafter
23 "requested assistance from the USMS deputies, fearing that they were "trapped" inside the coffee
24 shop by the protestors.  Of course this is an absurd position considering that the agents are fully
25 armed, and carry the authority of the law, enabling them to issue orders to the crowd to disperse.
26

1  The agents choose not to issue any type of order to disperse. Rather than issuing any orders to
2  disperse the USMS deputies choose to fan the flames, and escalate the temperament of the
3  protest from a verbal protest to a physical melee. They did this by marching directly into the
4  crowd, and making physical contact with the protestors.
5       The video footage shows that before the melee occurred, there were at least four agents
6  stationed between the doors of coffeshop and the protestors. (See video capture at **Exhibit A**) A
7  number of the protestors were yelling insults, face to face with the agents. (See Police report
8  JAG-0057 at **Exhibit B**) Some were literally yelling mere inches from the agent's faces. (ibid.)
9  (**Exhibit C**) However, at the coffee shop location there was no contact, and no violence
10 occurring. That all changed when Agent Shakeri started to push the protestors as he traversed the
11 crowd. (See **Exhibit F**)
12      The government described Agent Shakeri's actions as follows:

13     Deputy Shakeri, in pertinent part, had to physically move protestors blocking his
    way. When Deputy Shakeri walked past Defendant, who was standing to Deputy
14     Shakeri's right, Defendant first attempted to elbow Deputy Shakeri in the back,
    and then struck him in the back with both his hands, while holding a protest sign.
15     Deputy Shakeri staggered forward from the force of the strike.
16 (DOC 136 p 3:13-18)
17      However the video footage and the photographs of the incident contradicts the
18 government's description of the events that occurred.
19      First we see in the videos a line of agents preceding Agent Shakeri traversing the crowd
20 in a line without any resistance or incident. (See Video Clip at **Exhibit C**) Agent Shakeri was
21 near the end of this line of agents.
22      One of the protestors, with his hands in his pockets, begins yelling at Agent Shakeri as
23 Shakuri starts to enter the crowd. This protestor was behind Shakeri. Physically unprovoked
24 Shakeri turns around and begins to batter that protestor, forcibly pushing the protestor back.
25 (See **Exhibits D, E and F**) Clearly Shakeri's action was not for the purposes of "physically
26

mov[ing] protestors blocking his way," as the government claims. Obviously someone positioned behind Shakeri cannot possibly "block his way."

Shakeri's actions demonstrate two things: 1) they establishes that Shakeri made offensive contacts with the protestors without cause; 2) that Shakeri has a propensity to use unnecessary force against the crowd.

After battering the protestor, Agent Shakeri enters the crowd. Then Shakeri, forcibly pushes past Gutierrez. (See **Exhibit G**) The government describes this contact as the "Defendant first attempt[ing] to elbow Deputy Shakeri in the back

The defendant is seen being pushed forward by the crowd. (**Exhibit G**) It is during that push, that Jose makes inadvertent contact with Shakeri to which he immediately recoils. This contact was the result of both the Defendant's disrupted equilibrium, and his reflex-like reaction.

Immediately after the Defendant pushed Agent Shakeri, Agent Shakeri is then struck by yet another protestor's elbow. (See **Exhibit I and J**)

Shakeri's reaction to then Defendant's contact demonstrates that Shakeri anticipated the contact as a natural result of the situation at hand. There Shakeri did not even turn around, in order to look at the defendant, as if nothing happened. It wasn't until Agents Lopez and McCloud seized Jose that Shakeri turned to look at Gutierrez. (See **Exhibit G**)

The totality of the circumstances does not justify the same punishment that would be meted out to an unprovoked contact with an agent. This is a situation where under a worse case scenario both the defendant and the victim are mutually engaged in offensive contact with each other.

## ARGUMENT

The prosecution argues that the court may not apply the most analogous and appropriate guideline to the instant case when it is not referenced within the Statutory Index for the statute of conviction. In support of this position the prosecution argues that the Court is bound to apply

**DEFENDANT'S SENTENCING BRIEF**

the guidelines, citing a November 1, 2000, amendment to *USSG* sections 1B1.1 and 1B1.2(a), which provides in part: "the sentencing court must apply the offense guideline referenced in the Statutory Index for the statute of conviction." However the guidelines are not binding upon they court.

As provided under the cautionary statement within 18 USCS § 3553 (b)(1): "[Caution: In *United States v. Booker* (2005) 543 US 220, 160 L Ed 2d 621, 125 S Ct 738, the Supreme Court held that 18 USCS § 3553(b)(1), which makes the Federal Sentencing Guidelines mandatory, is incompatible with the requirements of the Sixth Amendment and therefore must be severed and excised from the Sentencing Reform Act of 1984.]" Since the guidelines are advisory, the court may exercise its discretion and apply a guideline that is "most applicable to the nature of the offense conduct." As discussed in *United States v. McCulligan*, 58 Fed. Appx. 545 (3d. Cir. 2002).

**I.   USSG § 2A2.3 - MINOR ASSAULT, IN CONJUNCTION WITH USSG § 3A1.2-GOVERNMENT VICTIM ARE THE APPROPRIATE GUIDELINES FOR THIS CASE**

Defendant, Jose Gutierrez, disagrees with the Sentencing Guidelines calculations set forth in the Presentence Investigation Report ("PSR"). The Sentencing Guidelines calculations set forth in the Presentence Investigation Report ("PSR") are based upon the application of USSG §2A2.4. USSG §2A2.4 is not consistent with a violation of 18 U.S.C. § 111(a) based upon a minor assault on a Federal Officer, and it is not consistent with the instructions which were read to the jury.

As provided by the Presentence Investigation Report (DOC 131) "the probation officer does not believe [Defendant's conduct] rises to the level of obstruction of justice." (See DOC 131 ¶ 10) Thus the conclusion reached within *United States v. McCulligan*, 58 Fed. Appx. 545 (3d. Cir. 2002), that USSG §2A2.4 was more appropriate than USSG §2A2.3, does not apply, because in *McCulligan* there was a finding of "obstruction of justice" in that case.

### A. THE OFFENCE CHARGED IS CONSISTENT WITH USSG § 2A2.3 - MINOR ASSAULT, IN CONJUNCTION WITH USSG § 3A1.2

The offence charged in the instant case is more analogous to the provisions of USSG § 2A2.3 - Minor Assault, with a Base Offense Level of 7, in conjunction with USSG § 3A1.2 - Official Victim for an adjustment increase by 3 levels, totaling to an offense level of 10.

Under §2A2.3 - Minor Assault, *"Minor assault" means a misdemeanor assault, or a felonious assault not covered by §2A2.2 (Aggravated Assault)*.(See Application Notes, section 1. Definitions, re: §2A2.3)

In the instant case, the defendant was convicted for committing a minor assault, with physical contact, which falls within the definition of *"Minor assault"* as it applies to §2A2.3. Therefore, a Base Offense Level of 7 under §2A2.3 (a)(1) is appropriate.

Since § 2A2.3 does not incorporate the fact that the victim was a governmental officer performing official duties, USSG §3A1.2 (Official Victim) also applies, providing for a (+3) adjustment, bringing the total offence level to ten (10) in the instant case.

### B. USSG §2A2.4 is inconsistent with the jury instructions ordered in this case (Doc 112).

The defendant was charged and convicted for one count of Assault on Federal Officer or Employee in violation of 18 U.S.C. § 111(a), which Pursuant to Jury Instruction No. 11, involved three elements the government was required to prove at trial:

First, the defendant forcibly assaulted Deputy U.S. Marshal Shaygan Shakeri;

Second, the defendant did so while Deputy U.S. Marhsal Shakeri was engaged in, or on account of his official duties; and

Third, the defendant made physical contact Deputy U.S. Marhsal Shakeri.
(See **Exhibit K** - Jury Instruction No. 11 at Document 112)

USSG §2A2.4 includes a fourth element not included in the offence charged, that being an act "Obstructing or Impeding Officers." Therefore §2A2.4 is not consistent with the count

charged.

### C. USSG §2A2.4 is inconsistent with the provisions of 18 U.S.C. § 111(a), as they are charged in this case.

USSG §2A2.4 is inconsistent with the provisions of 18 U.S.C. § 111(a), as charged in this case. 18 USCS § 111 provides a penalty for three distinct levels of the offence: At Level 1, a fine or imprisonment not more than one year, or both for a "simple assault" without contact (18 USCS § 111 (a)); At Level 2, where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both (18 USCS § 111 (a)); At Level 3, Whoever, in the commission of any acts described in subsection [18 USCS § 111 (a) ], uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both. 18 USCS § 111 (b)

USSG §2A2.4 - Obstructing or Impeding Officers, provides four levels of punishment in light of its cross-referenced provision:

(a) Base Offense Level: 10

(b) Specific Offense Characteristics

    (1) If (A) the offense involved physical contact; or (B) a dangerous weapon (including a firearm) was possessed and its use was threatened, increase by 3 levels.

    (2) If the victim sustained bodily injury, increase by 2 levels.

(c) Cross Reference

    (1) If the conduct constituted aggravated assault, apply §2A2.2 (Aggravated Assault).

In the case of an assault, the provisions of 18 USCS § 111 are not consistent with the sentencing guideline provided by §2A2.4. 18 USCS § 111 distinguishes within subsection (a), between a simple assault (no contact) and an assault with contact (battery). 18 USCS § 111

further distinguishes both acts covered under subsection (a) from an aggravated assault in described in subsection (b). Subsection (b), includes all acts that involve the use of a "a deadly or dangerous weapon" or the "inflict[ion of] bodily injury."

The application of § 2A2.4 of the sentencing guidelines, to a case involving a forcible assault, with contact, such as the instant case is improper because § 2A2.4 provides a 3 level enhancement for both an "offense involve[ing] physical contact; or (B) [an offence involving] a dangerous weapon (including a firearm) was possessed and its use was threatened." According to the statute, an offence involving "a dangerous weapon (including a firearm)," warranting a 20-year maximum penalty, is far more serious than an offence involving physical contact, warranting an 8 year maximum penalty. As such these two levels of the offence should not be treated equally as provided by §2A2.4 (b)(1). This renders § 2A2.4 inappropriate for convictions involving a minor assault only.

Further, the provisions of 18 USCS § 111 apply to "Whoever-- (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with [an officer] while engaged in or on account of the performance of official duties." The use of disjunctive term "or," establishes the fact that a violation of 18 USCS § 111 may occur in a case, such as the instant case, which <u>does not</u> involve "Obstructing or Impeding Officers."

USSG §2A2.4 explicitly applies <u>only</u> to those cases where the defendant engaged in "Obstructing or Impeding Officers." The title describing §2A2.4 explicitly provides that §2A2.4 applies to a conviction involving the "Obstructing or Impeding Officers." Subsection (a) of §2A2.4, implicitly refers back to the title of §2A2.4, when setting the "base offence level." That offence can be only one thing - "Obstructing or Impeding Officers." Subsection (b) also refers back to the described offence, increasing offence 3 levels when the "<u>the offense</u> involved physical contact …" (*emphasis added*) Since both subsection (a) and (b) refer back to "the offence," and since the only definition of "the offence," provided within §2A2.4, is "Obstructing

or Impeding Officers," §2A2.4 applies only to those offences which involve "Obstructing or Impeding Officers." Therefore, § 2A2.4 is again inappropriate for convictions involving a minor assault only.

## II.    OFFENSE LEVEL COMPUTATION

**Count 1**: **Assault on Federal Officer or Employee**

### A.    Base Offense Level

The guideline for a minor assault offenses is found at USSG §2A2.3 of the guidelines. That section provides that an offense involving a Minor Assault with physical contact has a base offense level of 7.

### B.    Victim Related Adjustment

Pursuant to USSG **§3A1.2 - Official Victim, subsection (a):** If (1) the victim was (A) a government officer or employee, and (2) the offense of conviction was motivated by such status, increase by **3** levels.

### C.    Acceptance of Responsibility

The defendant demonstrated an acceptance of responsibility for his criminal conduct even though he exercised his constitutional right to a trial. In order to assert and preserve issues that do not relate to factual guilt, but rather addressed the government's misconduct. Therefore an adjustment for acceptance of responsibility may be applicable, decrease by two levels.

### D.    Total Offence Level

Based upon an adjusted offence level of 10, minus two levels of accepting responsibility, the total offence level is 8.

## III.    CONCLUSION

The Court should apply the sentencing guidelines provided by USSG § 2A2.3 - Minor Assault, in conjunction with USSG § 3A1.2 – Official Victim, for a base offence level of 10. At Offence Level 10, Category I, the recommended sentence is 6-12 months.

1  However in consideration that the defendant accepted responsibility, despite taking the
2  matter to trial for the adjudication of other issues, including matters pertaining to the
3  government's conduct, the base offence level should be adjusted to 8, bringing the recommended
4  sentence to 0-6 months.
5  The Defendant should also be entitled to a downward departure, as argued in the
6  Presentence Reports of both the Government and the Defendant (See Doc 134) in consideration
7  of the Defendant's diminished mental capacity, and consideration of the governments action
8  during the arrest.
9  Finally, the court should take into consideration "the nature and circumstances of the
10 offense" pursuant to 18 *USC* § 3553 (a)(1), which include the government's failure to take any
11 measures to protect its officers and the public, when engaging in the execution of a search
12 warrant at a highly controversial location, and the excessive forced used to arrest Mr. Guttierrez.
13 In light of the forgoing, the defense believes that Zone A, Category I, guideline,
14 providing 0-6 months is more appropriate for this case.

### IV.   NOTICE OF INTENT TO FILE APPEAL

16 While we pray the court is able to see the punishment in this case has already far
17 exceeded the scope of the offense itself, in the unlikely event that the court deems incarceration
18 an option in this case we respectfully reserve our right to file a notice of appeal immediately
19 following sentencing and would ask that the court grant bail pending said appeal should this
20 ordeal need to continue.

Dated: January 9th, 2014

---------------/s/--------------------
**Editte Lerman**
Attorney for Defendant
JOSE ANTONIO GUTIERREZ

# DECLARATION OF SERVICE

I, Editte Lerman, declare as follows:

I am a resident of the State of California, residing or employed in Mendocino County, California. I am over the age of 18 years and am not a party to the above-entitled action. My business address is 280 North Oak Street, Ukiah, CA 95482.

On January 9, 2014

**DEFENDANT'S SENTENCING BRIEF**

was served upon the following parties via the Court's PACER-ECF electronic filing system.

**Rodney C. Villazor**
U.S. Attorney's Office
1301 Clay Street
Suite 340-S
Oakland, CA 94612
513-637-3689
Email: rodney.villazor@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wade Maxwell Rhyne**
Department of Justice
United States Attorney's Office
1301 Clay Street
Suite 340S
Oakland, CA 94612
510-637-3693
Fax: 510-637-3724
Email: wade.rhyne@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this 9th day of January, 2014, at Sonoma County, California.

----------------/s/--------------------
Editte Lerman